Good morning, ladies and gentlemen. This is Judge Easterbrook. I am in the courtroom in Chicago. Judges Rovner and Sykes are participating by phone, as are all of the lawyers. This is a more complicated hookup than the court has ever tried before, so there are bound to be some teething problems. If you find that multiple people are speaking at once, it might be a good idea for everybody to be quiet, and we will sort this out. I will let the lawyers know when time reserve for rebuttal is approaching, and call out other time considerations. I hope this will go smoothly, but if not, we will take the time needed to make sure that everything works. So, our first case for argument this morning is E.F. Transit v. Indiana Alcohol and Tobacco Board. Ms. Shaharia. Good morning, and may it please the Court. Amy Shaharia of Williams and Connolly for Appellant E.F. Transit. Can you please proceed? The state does not concede in this case that the Federal Aviation Administration Authorization Act protects from state regulations the transportation services that E.F. Transit wishes to provide to liquor wholesalers. Now, Ms. Shaharia, this is Judge Rovner. Good morning. Good morning. You concede that under Indiana law, motor carriers are allowed to transport beer, wine, and liquor. It seems that any restriction on E.F. Transit here is based on its status as a beer wholesaler, not as a motor carrier, and given that the Federal Aviation Administration Authorization Act just applies to laws related to motor carriers, not laws related to wholesalers, would you please explain to us how do the prohibited interest statutes conflict with Federal law here? Sure, and two responses, I think. The first is as a matter of the record in this case. The record is clear that under the contemplated agreements that E.F. Transit wishes to consummate, E.F. Transit would perform only the functions of a carrier and an independent third party would perform the functions of the liquor wholesaler. All of the Commission's witnesses agreed with that proposition, and so what the Commission is attempting to do here is to restrict E.F. Transit from providing purely transportation services. Now, under the Federal Act, and it's an unwieldy name, so I'll just call it the Federal Act, the Supreme Court has made clear that state enforcement actions, this comes from the Morales case, which construed the sister preemption provisions, state enforcement actions having a connection with or services of a transportation company are preempted and preemption may occur even if the law's effect is indirect. Now, here, the enforcement that the state has threatened very directly targets transportation services of a carrier. E.F. Transit is a carrier. E.F. Transit wishes to perform what all Commission witnesses agree are transportation services to a liquor wholesaler, and the Commission has prohibited E.F. Transit from performing those services. We think under any reading of the Federal Act, and the Supreme Court has affirmed that this is a very broad, expansive Act, that the Act is applying to prohibit transportation services of a carrier, and the state, by the way, does not dispute that proposition. Now, Ms. Saharia, I have a different version of Judge Rovner's question, which is, if E.F. Transit were to carry Indiana Wholesale's liquor, what would happen concretely, and to whom? I'm not sure I understand the question, Your Honor, but I'm trying to figure out what happens if E.F. Transit carries some other business's liquor. Is Indiana going to try to prevent the transportation service, or is Indiana going to revoke somebody's license, somebody's liquor license, or both? Well, at a minimum, Indiana would attempt to revoke, I believe, any number of licenses. It could attempt to revoke E.F. Transit's carrier license. It could attempt to revoke Monarch. Look, I'm not asking about abstract possibilities. I'm asking about how the legal rules in Indiana work. So the answer to my question involves analyzing some statutory text. Sure, well, when the parties approached the Commission in connection with the most recent agreement, which was a transportation agreement, the Commission responded that if it concluded a prohibited interest was at stake, it could, or would, refer the matter to the prosecution. Now, there could be criminal penalties. There are criminal penalties associated with knowing violations of the Alcoholic Beverages Code, as well as the potential for license revocation. Monarch's license could be revoked. Whose license, counsel? Whose license? Well, because the Commission takes the position that Monarch and E.F. Transit are the same, I believe that both Monarch's and E.F. Transit's licenses are at risk of revocation if E.F. Transit were to provide transportation services to Monarch. Now, if E.F. Transit, this is Judge Rovner again, if E.F. Transit severed its ties with Monarch, would you concede that Indiana law would place no restrictions on its ability to ship liquor? Yes, yes, of course. Indiana law prohibits, permits carriers to carry all three kinds of alcohol. Okay, but if the prohibited interest statute placed restrictions on it, only if it is also a beer wholesaler, how can we characterize that as a restriction on a motor carrier, as opposed to a restriction on a wholesaler? I'm just, you know, puzzled. Sure, well, again, what E.F. Transit wishes to do is to provide carrier services to a liquor wholesaler. And again, all the Commission witnesses agree that's what E.F. Transit would do under these agreements. It would not be performing wholesaler services, it would be performing carrier services. That is, those are the agreements that are at issue in this case. And again, under the Federal Act, the Supreme Court has made clear that state enforcement actions, enforcement of state law, in a way that has a significant effect on the services that a carrier can provide, and even if it's an indirect effect, are preempted. And that is exactly what we have here. E.F. Transit, because of the Commission's threatened enforcement of state law, cannot provide transportation services that the market demands or would like E.F. Transit to provide. And that is precisely at the core of what Congress was attempting to fix when it enacted this preemption provision. Now, again, let me... My problem with your argument is that it seems to me that the prohibited interest statute is not being applied to E.F.T. in its status as a motor carrier. As a motor carrier, E.F.T. would be entitled to conduct all of the activities that it seeks to conduct involving beer, wine, liquor. It seems to me that any restriction on E.F.T. is based on its status as a beer wholesaler, a status that results from its connection with Monarch. Well, the Federal statute doesn't speak in terms of status. It speaks in terms of services of a motor carrier. And E.F. Transit is a motor carrier. And again, E.F. Transit's record makes it very clear that what E.F. Transit would like to do is to perform what everyone agrees are transportation services for wholesalers, for liquor wholesalers. And so the fact that the state has invoked... But it seems to me that you're not just a motor carrier. You're also a wholesaler. Well, sure. And that goes to the state's supposed rationale and its explanation for prohibiting these services under the 21st Amendment. I don't deny that that status is relevant to the 21st Amendment analysis. But I don't think that it's dispositive of the threshold preemption question, again, which is a question that the state has not even challenged here. But the state rests its arguments entirely on the 21st Amendment. And under the 21st Amendment... Well, but we, you know, we don't have to, you know, we don't have to agree with that agreement. The court has discretion not to, but I think it would be anomalous for the court to decide a case on an issue that the state does not even challenge. Now, with respect to the 21st Amendment, a very long line of Supreme Court and circuit court cases make clear that the state bears the burden to show that its regulation is advancing an interest protected by the 21st Amendment to prevail over conflicting federal law. And the record in this case makes abundantly clear that the state is not advancing any such interest in this case. Multiple commission witnesses, including its 30B6 witnesses, testified that prohibiting EF transit from providing transportation services to liquor wholesalers did not serve any interest protected by the 21st Amendment. There's multiple examples in the record. I would point the court as one example to Appendix 58. This is a testimony by the commission's 30B6 witness, Mr. Bedwell. Question, are you not aware of any benefits to the state from prohibiting the pure transportation agreement? Answer, for the transportation agreement, no. The state's arguments require the court to ignore all of this evidence in the record that shows that the state does not have a legitimate 21st Amendment interest. The state's arguments also require the court to ignore the unrebutted evidence that the actual reason for the commission's action in this case was to protect powerful politically connected industry incumbents and not to advance the 21st Amendment interest. The witnesses confirmed that the governor's office intervened at the behest of liquor wholesalers to prevent this agreement, and the contemporaneous documents confirm that. Again, the state just has no response whatsoever. The only evidence that the state has cited in connection with the 21st Amendment is the testimony of Chairman Cook about the reason for the prohibition on joint wholesaling writ large. Again, we are not challenging that prohibition. EF Transit only wants to provide transportation services, and when it came to the transportation services at issue, all Chairman Cook could offer was speculation that the prohibition was necessary to prevent speculative abuses. This is a sort of economic rationale for the state's action in this case, and that somehow some sort of monopoly power would be Monarch would obtain monopoly power and abuse retailers. They've offered no economic evidence for this rationale. He conceded his testimony was uneducated and that other provisions of the law protected against those abuses. And under the Supreme Court's decision just last term in Tennessee wine, that kind of unsubstantiated speculation simply cannot carry the day when the state is attempting to overcome conflicting federal laws by relying on the 21st Amendment. The state has offered two rationales for distinguishing this long line of Supreme Court cases and the circuit cases. The first is that cases like Tennessee wine are simply an opposite, and that's not so. The Supreme Court has repeatedly cited the same balancing facts in both lines of cases, including most recently in Tennessee wine. The second is that under this court's decision and when the state is exercising a core power, it's entitled to a presumption of validity. We think the court gets to a presumption under that case only once the state has substantiated that it is actually advancing the 21st Amendment interest. Any other reading would be inconsistent with Tennessee wine, but in any event, a presumption is always rebuttable. And the evidence here abuts that presumption in spades. The court still needs to conduct the balancing test, and we believe we prevail under the balancing test. And because the state's evidence is so meager and the federal interest here is quite powerful. Unless the court has further questions at this time, I'll reserve the remainder of my time for revile. Certainly, Ms. Sahara. Thank you. Mr. Craft. Thank you, Your Honor. Aaron Craft for the commission. May it please the court. Indiana Supreme Court has already held that we have transit and monarch are one and the same, and it is only because of that relationship that the prohibitive interest statute barred we have transit from transporting liquor. Now there are two equally valid and narrow ways to affirm the district court's judgment. First, the court can apply its precedent in Huskie and hold that the prohibitive interest statutes are a presumptively valid and reasonable exercise of Indiana's core 21st Amendment power to regulate transportation and distribution of alcohol. Second, the court can take the route proposed by the prohibitive interest statute. Now, Mr. Craft, the Center for Alcohol Policy argued in its amicus brief that there is no conflict between the Federal Aviation Act and the prohibited interest statute. You agreed, if I got it right. Hello? Yes, I'm here, Your Honor. And in the district court, you agreed in the district court that there is a conflict. Is that still your position? I mean, now it seems to me you are making the argument made by the Center for Alcohol Policy. Well, Your Honor, if I may, the state actually did present the textual argument in its briefing on summary judgment at record number 166 of pages 26 and 27. We did never actually concede this point. I think after this court remanded the case back to the district court, EF Transit accused us in a brief of conceding that, and we pushed back on that for seeing what we had done before. But I think it's also important to point out that the arguments that the Center for Alcohol Policy make and arguments that we make in our brief on appeals are really just different ways of coming at the same issue. And that is whether the Federal Act controls here or whether the state laws control here. And I think, you know, EF Transit has had ample opportunity to respond to this argument. And the court allowed the Center for Alcohol Policy to submit its amicus brief precisely because it offered sort of a unique take, different from the parties. And I think, as you had mentioned earlier, even if we had conceded, you know, this court usually doesn't defer to states' interpretation of federal law. So I think that issue is properly before the court. Now, and again, both relying on Husky or having a strict sort of preemption holding would be narrow remedies. EF Transit, on the other hand, seeks a sweeping remedy. It wants the result of agreeing with EF Transit would be an unprecedented invalidation of a non-discriminatory state law regulating who can transport liquor. It would also provide a roadmap for other players within the three-tier system to overcome both horizontal segregation and vertical segregation. All they would have to do is create a motor carrier and say the Federal Act allows us to provide these services. But there's nothing in the Federal Act that indicates that Congress intended such a result which would impose a national uniform standard in contravention of both the 21st Amendment and the West Kenyan Act. Now, I'd like to begin with Husky, which I believe is the least complicated route here. Under Husky, which relied on North Dakota, statutes that are an exercise of the state's core 21st Amendment power to regulate transportation of alcohol and the structure of the alcohol distribution system carry a strong presumption of validity. Then, under the Husky analysis, the court has to look at the state interest versus the federal interest. In the state interest, the court asks whether there are core 21st Amendment interests in the state. Where, counsel, where does all this interest balancing come from? The Supremacy Clause says that federal law is supreme. It doesn't say it's supreme if on balance a court thinks it's better than the state law. It just says federal law is supreme. I can understand an argument that the 21st Amendment permits a state to regulate the transportation of liquor, notwithstanding any federal law, because the federal law is based on the Commerce Clause and the 21st Amendment is more recent. But I don't understand where balancing comes from. Where does it come from? Well, that comes from the Husky majority. I think the separate opinion in the Husky case... Counsel, could you try again? Could you say where it comes from? The majority opinion in the Husky decision adopts... In other words, it comes out of thin air? Does it come out of the text of anything? Well, again, as we point out in our brief, we don't think that it does call for balancing. We have the view that the 21st Amendment, because it gives the state the authority to regulate the transportation of alcohol, that for state laws regulating the transportation of alcohol, the Constitution basically elevates those state laws to constitutional status over congressional statutes in this very narrow area. Now, the cases like Mid-Cal Aluminum and Capital Cities, those cases did not I must say, I don't understand where this core powers thing comes from either. What Section 2 of the 21st Amendment says is that the transportation or importation into any state, etc., of intoxicating liquors in violation of the laws thereof is hereby prohibited. Indiana is not using that language. It doesn't seem to be a case of transportation into the state only. Am I misunderstanding? Well, no. The record here does show that EF Transit is transporting alcohol into the state from Illinois and Ohio. And for that, the state can absolutely ban it. But Indiana also seems to be regulating the transport of liquor within the state by an interstate carrier. And that looks like it comes within the scope of the federal preemption clause. There may be two answers here, one for intrastate and one for interstate. Well, the Supreme Court's decisions in the preemption cases, Mid-Cal, Capital Cities, and North Dakota, nor the 324 liquor case, indicate that that is how to draw the line between interstate and intrastate. Could you repeat that? Could you just repeat that? Well, the Supreme Court's decisions in Mid-Cal, Capital Cities, and North Dakota do not draw a distinction between interstate shipment of alcohol and intrastate. Instead, they speak of the state's virtually complete control to structure their alcohol distribution systems. Now, of course, that virtually complete control is limited by other substantive constitutional provisions, primarily the anti-discrimination principle underlying the Commerce Clause, which we know from Tennessee Wine now is part of the Commerce Clause. But the decisions there do talk broadly about giving the state the authority to regulate the distribution of alcohol. The North Dakota case involved precisely that. So, I think that because we're talking here about the transportation and the distribution system, the three-tier system, which the Supreme Court has determined on multiple occasions is unquestionably legitimate, that we are here at the core of the 21st Amendment. Let me ask you this. If EF Transit severed its relationship with Monarch, would there be any restrictions under Indiana law on its ability to transfer liquor along with beer and wine? No, Judge Roebner, there would be not. The problem here is not the fact that EF Transit is a motor carrier. The problem is that EF Transit is, for all intents and purposes under Indiana law, a beer wholesaler. Right. Now, could it store beer, wine, and liquor in its warehouse as part of its delivery services? If it had divested its interests with Monarch, I think it can. That gets into some questions about what exactly the transporting agreement would allow. But I think both the 2009 and 2012 proposed agreement, I don't think would be a problem if EF Transit completely severed its relationship with Monarch. And the horizontal segregation of interests, this isn't something that the state came up with out of thin air. This was one of the primary recommendations of the Influential Rockefeller Report. Forgive me for a minute, and it may be totally irrelevant, but what came first, Monarch or EFT? Monarch. Monarch severed its Okay. Thank you. Yeah. Yeah. Okay. Again, the Rockefeller Report suggested product segregation, and Indiana for 85 years has done that. These statutes rationally further the 21st Amendment interest in market stability and promoting temperance. With regard to market stability, it prevents large wholesalers from dominating the wholesale market and building undue influence over retailers and regulators. And even though in this instance EF Transit isn't wholesaling, it is tying its financial interest, Monarch's financial interest, to the financial interest of another permittee. And that is precisely what the segregation of interests is designed to prohibit. And as this court acknowledged in the Monarch case, the Equal Protection Challenge, the segregating beer and liquor as a wholesale pair reasonably promotes temperance because it makes wholesaling more costly. Mr. Kraft, this is Judge Sykes. Good morning. Good morning, Judge Sykes. If we assume that some balancing under the Supreme Court's cases in the 21st Amendment context require, if we assume that some balancing of federal and state interest is required, at what level of generality do we evaluate the state's interest? Do we evaluate the interest in maintaining the horizontal separation structure of the prohibited interest statutes and the fit between that regulatory scheme and the state's interest? Or do we evaluate the state's interest as applied solely to restricting transportation services provided by a motor carrier? Because the evaluation might shake out a little bit differently depending on what the record reveals. As an opponent argued, the Commission's witnesses had something different to say in response to the more specifically And I think it has to be taken at a higher level of generality because this is part and parcel of the three-tier system. The three-tier system is susceptible to slow erosion over time if these sorts of things ship away, ship away, ship away. All of a sudden you're talking about real problems. I think for that reason you have to go at the highest level of generality. With respect to the 30B6 witnesses, neither the 30B6 witnesses nor the Commission can testify to legal conclusions or overcome the So this is a hot area of legislation. The General Assembly takes this very seriously, takes a close look, but it has explicitly made a legislative finding that the distinctions drawn in the statute are real and substantially further the purposes of the law. And I don't think that a 30B6 witness can overcome that. With the state interest on the one side, on the other side you have the federal interest. The Commission does not disclaim or deny that the regulatory interests underlying the federal act generally are important, but those really aren't implicated here. We're talking about a very narrow disqualification. The prohibited interest statute don't bar ordinary motor carriers from transporting liquor and beer. They only bar beer wholesalers from transporting a liquor wholesaler's liquor. I think in that regard the interests also pale in comparison to the federal interest at stake in Mid-Cal and Capital City. Mid-Cal in particular was about the Sherman Act, which the Supreme Court described as the Magna Carta of Commerce. The federal interest is also less in this case than it was in Husky because the statute in Husky actually restricted all motor carriers from doing something, whereas here, again, it's just the F-Transit because the F-Transit is the only motor carrier that has this sort of ownership, overlapping ownership and control with a beer wholesaler. Again, I also think it's important that the federal act lacks a clear statement by Congress to preempt state laws governing the transportation of alcohol. And in fact, the strong presumption of validity and the state interest served here, I think they outweigh the federal interest. And I think it's also important that the F-Transit approach here, if accepted, would provide a roadmap for producers to send out a motor carrier so that they can deliver direct to consumers or direct to retailers. There's no logical stopping point to that argument. And because that would really jeopardize the continued validity of the three-tier system, I think that magnifies the importance of the state interest. Now, with regards to the Tennessee wine case, we don't think that the Tennessee wine case alters the analysis we put in the brief or alters Husky because the Tennessee wine case is effectively brand home, too. That's an anti-discrimination case under the Commerce Clause. And the statutes here do not discriminate against out-of-state interests. In fact, EF-Transit is an Indiana wholesaler. And I think another thing that's important... Mr. Kraft, you have two minutes remaining. Thank you, Judge. I think another thing that's important is that the 21st Amendment was intended to give states freedom and flexibility to regulate transportation of liquor and distribution of alcohol in a manner that best suits the conditions and values of a particular state. It's meant to encourage experimentation. But what EF-Transit is wanting is a uniform standard that if states that don't have this haven't had a problem, then you can't do it. But I think the evidence justifying the state law here is the fact that in 85 years, we've not had those problems. And if I may, in the little time remaining, I'd like to return to the Center for Alcohol Policy's argument. There is no language in the statute that does not relate to motor carrier services. Instead, they regulate the conduct of alcohol producers, wholesalers, and retailers, and bar those entities from engaging in certain conduct. With respect to Judge Easterbrook's question earlier, the disciplinary action that the commission would take in this case is to go after monarch's license. I think that was actually part of EF-Transit 1. That was one of the main arguments EF-Transit made on rightness was that the commission could revoke monarch's license if EF-Transit continued doing that. But the commission also has regulatory authority over EF-Transit by virtue of its license to transport alcohol. It does, Your Honor, but that regulatory authority is far less intrusive. Really, all a motor carrier has to do is fill out a two-page application and submit a small fee. I am unaware of the commission ever taking action against a motor carrier because those permits are so broad. Would its license be at risk if it moved forward with this agreement with Indiana Wholesale? With EF-Transit? Yes. I don't think it would be. I think, again, the enforcement action would be taken against monarch as the beer wholesaler. Once monarch is no longer a beer wholesaler, then EF-Transit would be able to go on. I am unaware of any evidence in the record or any discussions with the commission that they would pursue some sort of disciplinary action against EF-Transit's motor carrier permit. I was actually asking a legal question. Does Indiana law permit the commission to take a regulatory enforcement action against the carrier's license, EF-Transit's license, for entering into this arrangement that violates the prohibited interest statute? I am unaware of any statute that gives the commission that sort of authority over motor carrier permits, like a revocation or disciplinary action over revocation permits. I apologize for that. Well, that just returns us to the preemption question about whether there is even an indirect conflict here. I understood this to be an indirect preemption case, not a direct preemption case. We have an express preemption clause and a claim that this particular application of the prohibited interest statute in Indiana indirectly conflicts and therefore is preempted. But you're saying there isn't even an indirect conflict because there's no legal authority for the commission to revoke the motor carrier license? I guess I'm saying there's no indirect conflict here because this is just incidental. The Supreme Court and this Court have acknowledged that the line between what's preempted and what's not is hazy. And I think our position is really that this falls into the too tenuous or remote because it's really regulating the underlying conduct of wholesalers not the conduct of motor carriers. And so just to clarify, you're unaware of any authority under Indiana law for the commission to take regulatory action against EF Transit? Should it proceed with this? I am unaware of that, but that could just be because I haven't yet seen that statute despite my extensive involvement in preparation for this. Again, that's never really been on the table. It is possible that there is a one way or the other. I'm just not aware of that. I apologize for not being able to answer that question. Thank you. Ms. Zaharia, you have a little less than five minutes remaining. Thank you. To answer Judge Sykes' question, in the earlier appeal at page 5 of our opening brief, we cited Indiana Code Section 7.1-2-3-9 for the proposition that the commission is empowered to revoke carrier permits. And I do not recall the commission taking any issue with that statement in the prior appeal. So that answers that question. With respect to the consumer for alcohol policies brief, I think there's two fundamental flaws with that position. The first is it's simply irreconcilable with the Supreme Court cases construing the preemption provision and its sister aviation preemption provision, which made clear that a statute need not directly reference motor carriers to fall within the scope of the preemption provision. I think Morales is the best case for that. Morales makes very clear that even enforcement actions that have an effect on a motor carrier are preempted. The second problem with it is that it rests on the proposition that there should be some sort of clear statement rule in a federal statute to overcome the 21st Amendment. There's no authority for that, apart from perhaps Judge Hamilton's concurring opinion, which is not the law of this circuit. And again, that is just irreconcilable with Morales. Second, nothing that ES Transit wishes to do is going to undermine the three-tier system. And counsel said that this is part and parcel of the three-tier system. That is not the test. Tennessee Wines expressly rejected that kind of argument and said that the court needs to look at precisely the feature that is at issue in any concrete case. And the feature of Indiana's law that is at issue here is not the joint prohibition on wholesaling, because again, the commission's witnesses all agreed that ES Transit would not be wholesaling. What is at issue here is Indiana's desire to prohibit ES Transit from providing transportation services. That is the distinct feature of Indiana law that's at issue. And so the relevant question is whether that particular feature of Indiana's system, which, by the way, is unique to Indiana, is justified by the 21st Amendment. And to answer Judge Easterbrook's question about where the balancing test comes from, well, the Supreme Court has said that's the law. And it has said that both in the Dormant Crime Response cases and in the preemption cases. The most recent preemption case by the Supreme Court is the 324 liquor case. And that case did not do what counsel claimed these cases did, which is to recognize one test for core powers, whatever that is, or another test for non-core powers, whatever that is. What the court said is the question in each case, that's a direct quote, the question in each case is whether the interests implicated by state regulation are so closely related to the powers reserved by the 21st Amendment that their regulation may prevail, notwithstanding that it conflicts with express federal policies. And that's the balancing test the Supreme Court has mandated, and it requires the state to show that what it is doing is actually advancing a 21st Amendment interest, and it's not just related to distribution of alcohol in the broadest sense of that term. With respect to the 21st Amendment, counsel invoked two interests. Thank you. One, he said this promotes temperance. If you look at the testimony of Chairman Cook, he was directly asked whether this has anything to do with consumption of alcohol. This is at page 226. The answer, I don't know that this has that, sorry, I don't think this has anything to do with that. Nothing to do with consumption of alcohol. So the state can't just make up an interest without having some evidence that it actually achieves that interest. The same with the other interest in orderly market conditions. Again, there's just no evidence that what the state is doing here actually advances that interest. And then finally, with respect to the federal interest here, the federal interest here is exactly the same federal interest that was at issue in the Capital Cities case, which is that Congress enacted this provision as a capstone in its long history of deregulation in this industry in order to prevent states from enacting a tax work. Thank you, counsel. The case is taken under advisement. We will go to our second case of the day.